### RICHARD TEMPLE *vs.* DANIEL POMROY & another.

An agent employed to buy and sell has no authority to bind his principal by a negotiable note given for goods bought, unless the giving of such notes be indispensable to carrying on the business in which he is employed.

Evidence that one negotiable note, given to one person by an agent in behalf of his principal, was paid by the principal, under protest, and on receiving satisfactory indemnity from the agent, is not sufficient evidence of the authority of the agent to bind the principal by a similar note to another person.

ACTION OF CONTRACT against Daniel Pomroy and Francis T. Swan, describing them as late partners in the butchering business under the firm of Pomroy & Swan, on a negotiable promissory note signed with their individual names. Swan was defaulted. A trial was had in the court of common pleas at August term 1855, before *Mellen*, C. J., who signed the following bill of exceptions:

" It appeared that the signature of the defendant Pomroy was not affixed to the note by himself, nor in his presence. The plaintiff offered evidence to show that it was affixed by Swan, acting as Pomroy's agent. The defendant Pomroy objected to parol proof that the name was affixed by an agent, that fact not appearing on the face of the paper. The evidence was admitted by the court, the court ruling that it was competent to show that the signature of Pomroy was put to the note by an agent thereto duly authorized, though no words of procuration appeared on the face of the note; and the court left the question of fact to the jury to find, whether Swan, by whom it was proved Pomroy's name was written on the note, had authority to sign Pomroy's name to the note without naming his agency.

" There was evidence tending to prove that Swan was employed by Pomroy as his agent to manage the butchering business in the town of Shelburne from May 1853 to September 1853. The plaintiff introduced evidence tending to show that Pomroy succeeded one Martin in the prior firm of Swan & Martin, who carried on the business of buying and selling meat and slaughtering. And the books and acts of the defendant Pomroy; and his dealings; books of account kept in his own

name, containing credits of cattle purchased by said Swan for the business, while it was going on, and, in two or three instances, notes entered and charged in payment of the same accounts opened with each, also showing the small amount of moneys advanced by Pomroy to carry on the business, compared with the exigencies of the business carried on; and the fact that, in some other instances, notes were signed in the same way, in similar transactions; were offered in evidence to show in the first instance an authority in Swan to bind Pomroy by note, as a partner, and in the next place, as agent, under an authority express or implied from Pomroy as principal.

" The counsel for the defendant Pomroy requested the court to instruct the jury that no implication of authority to sign the note arose from the fact that Swan was an agent to carry on the business; as shown by the evidence; and that such authority was not to be implied from the nature of the business. The court declined so to give the instructions, as matter of law, but left it to the jury, upon all the evidence in the case, to find whether Swan was authorized by Pomroy to sign his name to the note in suit without naming his agency.

" There was evidence tending to show that another note to one Hall, signed similarly to that in the present action, had been paid by Pomroy under protest, and upon receiving security which he deemed to be sufficient from Swan.

" The defendant's counsel asked the court to instruct the jury that the payment of a single note under these circumstances could, at the most, prove nothing more than that the defendant misunderstood or was willing to waive his real rights. But the court declined so to rule, as a matter of law, and instructed the jury that this was a question of fact for them to determine, how far this evidence, under the circumstances, tended to prove an agency in Swan to sign the note in suit. And the judge further charged the jury, that if they should find that the giving of notes was necessarily incident to the management of the business Swan was authorized by Pomroy to conduct for him, the agency would imply an authority for that purpose.

" To these refusals and rulings the defendant excepts."

*C. Allen*, for Pomroy.

*C. P. Huntington*, for the plaintiff.

MERRICK, J.   The plaintiff does not contend that Swan was expressly authorized by Pomroy to put his signature to the note in suit.   As a general rule, a special agent, or one who is employed to make purchases for his principal, has no authority, unless it is directly conferred, to bind him by a negotiable note or bill of exchange.   But such a power is a necessary implication from his employment, whenever its exercise is indispensable to the discharge of the duties to be performed.   *Paige* v. *Stone*, 10 Met. 168.   *Taber* v. *Cannon*, 8 Met. 458, 459.   To the general instructions, therefore, of the presiding judge, that if the giving of notes in the name of his principal was necessarily incident to the management of the business which he was to conduct for Pomroy, his agency would imply an authority for that purpose, there appears to be no valid ground of objection.   But in reference to particular questions which arose in the progress of the trial, and to which the attention of the court was requested by the defendant, the rulings and instructions given to the jury are not equally satisfactory.

1. Evidence was adduced by the plaintiff, tending to show, and which may now be considered as sufficient to prove, that on some other occasion a note similar to the one in suit, and signed in the same manner, had been made by Swan, in the course of his dealing in the business of Pomroy, payable to a person of the name of Hall, which was afterwards paid by Pomroy, though under protest, and not until he had received from Swan what he considered satisfactory security to indemnify him for doing so. His counsel contended, in substance, that the payment to Hall, under such circumstances, implied no authority in Swan to make other notes, or the note in suit, in his name; and that, in short, it proved nothing more than that he might in this instance have misunderstood or was willing to waive his rights.   But the court declined to rule to this effect, as matter of law, and instructed the jury that they were to determine how far this evidence tended to prove the authority of Swan, as the agent of Pomroy, to put his signature to the note in suit.   This instruc-

tion cannot be sustained. It imported that it was competent for the jury to infer from this evidence the lawful authority of the agent to bind his principal, in another instance and upon another occasion, by a promissory note. This was erroneous, because such an authority is never to be assumed or inferred, unless it results as a necessary implication from the facts established. And surely the transactions concerning the note to Hall afford no ground for such an implication. It does not appear that Pomroy had any knowledge of its existence until the time of its maturity. He paid it then under protest; that is, as we understand it, denying the authority of Swan to make it, and his own liability to be bound by it. And he fortified this denial by persisting in his refusal to pay until he received from Swan security for the reimbursement of the money he should advance for that purpose. All this evidence concerning the note to Hall may have been inadvertently admitted upon the trial, but since it was received, the jury should have been guarded, as the defendants' counsel desired that they should be, from giving it an effect to which it was not legally entitled.

2. The counsel for Pomroy further requested the court to instruct the jury that no implication of authority to sign the note in suit arose from the fact that Swan was an agent to carry on the business, as shown by the evidence, and that such authority could not be implied from the nature of the business. The evidence referred to in this request is so imperfectly detailed and exhibited in the bill of exceptions that it is very difficult, and perhaps impossible, to appreciate exactly the question proposed to the court, or the ruling which was made upon it. Nor is this necessary, since it is apparent that the instructions given to the jury in relation to it were not accompanied by the necessary qualifications and restrictions. It was left to them, in indefinite terms, to find, upon all the evidence in the case, whether Swan was authorized to sign his name to the note in suit without naming his agency. The question of fact, which was in issue in relation to that authority, it was undoubtedly their duty to determine; and so far they were rightly advised by the court. But under the special requests submitted by the counsel for the

defendant, they should also have been advised that, though an agent employed to make purchases for his principal ·may undoubtedly bind him by a contract of sale, he cannot ordinarily, without express authority, bind him by a negotiable promissory note ; and that the single exception to this positive rule is in relation to agencies, the objects and purposes of which cannot be accomplished without the exercise of such a power. If the instructions which were given in reply to this request of the defendant had been connected with or limited by those which were given apparently at a later stage in the trial or charge, though the occasion which induced the later explanation, or the precise evidence to which it was applied, is not developed in the bill of exceptions, they might have been held to be sufficient. But without such limitations they cannot be considered as having been sufficiently guarded to secure to each of the parties the legal rights to which they were respectively entitled.

*Exceptions sustained.*